ATCHISON & NEBRASKA RAILROAD COMPANY V. JOSHUA GARSIDE.

1. STREETS AND HIGHWAYS; *Fee in the County.* The fee of all streets and other grounds which have been dedicated to the use of the public by the proprietors of any city in Kansas is, under the statutes of this state, vested in the county in which such streets or public grounds are situated, and not in the abutting lot-owners.

2. ———— *Power to Regulate Passage of Railroad; Who may Exercise.* The county, however, holds such streets and public grounds as a mere agent of the public, in trust for the public use; and the city in which such property is situated has under the statutes of Kansas, the entire power to provide for and regulate the passage of railways over the same.

3. DAMAGES—BUILDING AND OPERATING RAILWAYS OVER STREETS AND PUBLIC GROUNDS; *Liability of Railway Company for Damages to Abutting*

*Lot-Owner.* A railway company having authority from the city may construct and operate its road over streets and public grounds without compensation to the abutting lot-owners for the use of the same, and without being liable to such lot-owners for consequential damages arising from noise, smoke, offensive vapors, sparks, fires, shaking of the ground and other inconveniences and annoyances, where the railroad is operated in a legal and proper manner, and in fact it may so construct and operate its road without being liable to said lot-owners for any damages where the road is constructed and operated in a legal and proper manner; but where the property is a street or highway, the railway company will be liable to any person who may receive actual injury from the illegal or unnecessary blocking up or obstructing of such street or highway by the railroad company, whether the obstruction be permanent or only temporary.

### *Error from Atchison District Court.*

GARSIDE owned two lots of 45 feet by 100 feet each, on which was erected a large brick warehouse, fronting on the levee, in the city of Atchison. He sued plaintiff in error to recover damages for injury to his business by the building of a railroad and operating the same along the levee in the public highway in front of his lots, which he claimed constituted an obstruction to travel in the street, thereby depriving plaintiff of use of the street, rendering access to his lots dangerous, depriving him of the proper use of his lots, and thereby rendering his lots useless for the purpose of his business as a warehouseman. Various proceedings were had which are sufficiently stated in the opinion. The answer filed by the *Railway Company* to plaintiff's petition was, first, a general denial, and a second defense, as follows:

"II. Defendant further answering says that said lots claimed by plaintiff front east, abutting upon an open space now and ever, as hereinafter stated, known as the 'levee,' and located between Commercial and Main streets in that part of the city of Atchison known as 'Old Atchison,' which was laid out as a town by the 'Atchison Town Company,' a duly organized and existing corporation, by virtue of the authority of the legislature of the Territory of Kansas in the year 1855; * * * * and the said Atchison Town Company did cause to be made out an accurate map and plat of said land so held and occupied, particularly setting forth and describing all of the parcels of ground within said town reserved for public

36—10 KAS.

purposes by their boundary, course, and extent, then intended for avenues, streets, lanes, alleys, commons, and other public uses, and also all lots intended for sale by numbers and their precise length and width, and showing said lots to be 45 feet front by 100 feet deep in size, and which said map and plat was duly acknowledged by the said Atchison Town Company before an officer then authorized by law to take acknowledgments of conveyances of real estate, and by said officer duly certified, and by said Atchison Town Company, on March 4th 1856, deposited in the office of the recorder of said county. And defendant says that the said lots claimed by plaintiff became known and exist of the size and location claimed by him as aforesaid by virtue of the laying out of said platting of such town site as aforesaid, as also is the case with the said open space so known as the 'levee,' and which lies immediately upon the bank of the Missouri river; * * * and when said map was so platted the said proprietor did particularly set forth thereon and describe the same as a *levee*, thereby reserving the same and intending same for the public uses and purposes of a levee at that place, which such uses and purposes were then and ever since known to be for the various uses of the public at large for commercial transit, trade, and travel, and for all kinds of transportation then in use or known, and including that of railroads, upon which are operated and run locomotive engines, passenger and freight cars, and tenders, moved and drawn and propelled by steam. * * * Defendant further says that said city of Atchison has ever since remained a duly incorporated city, and by virtue of due authority of law therefor the corporate authorities by ordinance did, on the 18th of May 1869, grant to the defendant the right to construct and operate its said railroad over and along the said 'levee,' in the place and in the manner the same is now constructed and operated, and of which plaintiff complains, which ordinance took effect May 20th 1869, and under and by virtue of which defendant has since constructed and ever since operated its said railroad. * * * And defendant, in building its said railroad, did conform the same to the grade of the said 'levee' opposite said lots, and to the streets and alleys leading thereto, and as soon as so built did plank and macadamize the same, all under the direction and acceptance of the proper authorities of said city of Atchison, and also did grade and improve said 'levee' all along its said railroad, and thereby greatly improved the said 'levee,' and made it at all times fit for public

travel, and thereby rendered access to and about said lots and said buildings thereon less dangerous and more readily accessible than was the case before the construction of defendant's said railroad."

To this defense plaintiff demurred, and the district court, at the March Term 1872, sustained the demurrer. From the order sustaining such demurrer the *Railway Company* appeals, and brings the case here for review.

*W. W. Guthrie,* for plaintiff in error:

1. The use of a public street for a railroad is not a *perversion* of the highway from its original purposes, and therefore the noises, smoke and other discomforts arising from its ordinary use, like the noise, dust, obstruction and other inconveniences resulting from use of carriages, driving cattle, moving a menagerie or a building through a street, although productive of injury to an adjoining lot-owner, is *damnum absque injuria.* 10 Ohio St., 624; 33 Mo., 128, 138; 21 Ill., 516, 523; 26 U. S. Dig., 467, § 124.

2. The petition does not state a cause of action. It states that defendant built a railroad, not in any improper manner, nor without authority; only against consent of plaintiff, in a public street in front of his premises, and to some extent interfered with the unrestricted access of the plaintiff to his lots; that its railroad (built in the usual manner, and legitimately used,) has driven away his business, thereby damaging him $10,000. If this is all true, unless his property has been depreciated in actual value, he has sustained no damage. But his only ground for damages is, that by using this warehouse he formerly made his livelihood, and that it is now useless for this business, and he has to carry it on elsewhere. A vacant lot, used for a wood-yard, might no longer be fit for this purpose after a trespasser had erected a brick block upon it, but on this showing could the owner recover?

The city had full authority to license this railroad in its streets, unless so doing was the taking of private property, regardless of plaintiff's consent. Gen. Stat. 1868, page 163,

§ 25; page 202, § 47; Private laws of 1858, p. 176, § 11. It is not claimed that defendant's railroad was built without the consent of the city authorities, or that enough of the street for necessary useful purposes was not left.

A railroad and its reasonable operation is a legitimate enterprise — an improved means of transit, recognized as a "*public work* for a highly beneficial purpose," and when authorized by the proper municipal authorities and used in a reasonable manner, its operation is a legitimate use of a public street; it is using the street for that *travel* and *business* peculiarly incident to a street. Gen. Stat., 202, § 47; *Moses v. Rld. Co.*, 21 Ill., 516, 522; *Porter v. Rld. Co.*, 33 Mo., 128, 137; *Lackland v. Rld. Co.*, 34 Mo., 259, 274; *Rld. Co. v. Brown*, 17 B. Mon., 762, 776; *Chapman v. Rld. Co.*, 10 Barb.; *Davis v. Mayor, &c.*, 14 N. Y., 506, (overruling 3 Hill, 119;) *Sargeant v. Rld. Co.*, 1 Handy, 52, 61; Pierce on Am. Rld. Law, 129, 180; *Elliott v. Rld. Co.*, 32 Conn., 579. To sustain the court below, it must be maintained, that it is actionable to use a public street in any other manner than by persons and teams; but not so: (*Clark v. Fry*, 8 Ohio St., 373; 17 B. Mon., 778; 34 Mo., 275;) or, that the user of a railroad is the imposition of an additional easement upon private property, requiring therefor further compensation — (in support of which, are relied on by defendant in error, *Williams v. Rld. Co.*, 16 N. Y., 97; *Mahan v. Rld. Co.*, 24 N. Y., 658; *Wager v. Rld. Co.*, 25 N. Y., 526; *Craig v. Rld. Co.*, 39 N. Y., 404;) but this proposition is at fault, since the act of 1870, page 156, § 2, provides a specific remedy which excludes any other: *Rld. Co. v. Whiteacre*, 8 Ohio St., 590; *Rld. Co. v. Stackhouse*, 10 Ohio St., 567; 36 Mo., 543; 34 Miss., 227; 31 Me., 215; 3 Humph., 456; 54 Penn. St., 203. To sustain the principle contended for by defendant in error, is to hold that *any* property-owner may await the investment of millions in a great public enterprise, and then enjoin its use, or sunder the line by ejectment, to be repeated at intervals by each property-owner as inclination may dictate; and to do this our statutes are to be overthrown, and the opinions of eminent courts of other states set at defiance. This is not a

case where the usefulness of a street is claimed to have been destroyed, as in 31 Mo., 180.

But it is said that private property cannot be injured by permitting the grade of the street leading thereto to be in any manner interfered with. We answer, that to build a railroad, at the worst but partially obstructing one kind of public travel by another, is not so great a hardship as changing the grade of a street to the ruin of adjoining lots, which is admitted to be *damnum absque injuria.* 17 B. Mon., 776; 4 Comst., 195; 12 Mo., 414; 25 Vt., 49, 59; 7 Ind., 482. "The progress of improvements and the exigencies of society, have left such a rule far behind," per J. Duval in *Rld. Co. v. Brown,* 17 B. Mon., *supra.* To maintain that the public authorities may not permit obstructions in streets for legitimate purposes incident to a city, so that a *reasonable* use of the street for its original purpose remains, such as weigh-scales, market booths, auction stands, stairways, pumps, gas posts, street railways, etc., or on a levee, for elevators, wharf-boats, etc., all of which to some extent incommode persons and interfere with business in that neighborhood, would be to destroy the very inducements to municipal prosperity. (Pierce on Am. Rld. Law., 181, 182.) But, admitting plaintiff's claim, he sustained no damage not in common with the public, and cannot recover in a private action. *Craft v. Jackson Co.,* 5 Kas., 518, 521; *Barr v. Stevens,* 1 Bibb, (Ky.,) 293; 10 Cush., 385; 17 Conn., 371; 19 Conn., 135; 21 Conn., 313. If the "levee" was, as averred by defendant, dedicated among other uses "for all kinds of transportation then in use or known, including *railroads,*" then plaintiff at the most bought his lots subject to such incumbrance of the levee, and could not complain when the levee was put to the use of a railroad. Plaintiff in his petition, avers that his lots are "situate upon the levee dedicated to the public use upon the plat of the city." And the defendant says this public use is in fact the very use to which we have put the levee. Then if true, our answer is a perfect defense.

3. If the petition did state a cause of action, our answer shows a perfect defense. It shows the legal status of the levee, what the *dedication* for a levee was, and defendant's license from the city. It shows also that defendant found the street unfit for use, and instead of impairing its usefulness actually improved the street for public travel, and made plaintiff's lots more accessible, and that such building and changes were made under direction and to acceptance of the city authorities, and that forty feet of unobstructed street was left, which was amply sufficient at that place.

But plaintiff answers with the legal proposition that "he owns the fee in the street; defendant has imposed an additional easement upon his property; and thereby taken his property for public use without compensation, and cannot now be heard to say that the benefits exceed the injuries." Concede his proposition, but it is not in this case. His action is for a subject-matter entirely foreign to the proposition. His suit is for obstructing a public street leading to his lot, and driving away his business; not for taking private property without compensation, and he can only recover *upon his petition*. But we insist that plaintiff never owned any interest in the "levee." The answer shows that the title was acquired by the town company under act of congress for entering "town sites," and the town laid out and platted under act of legislature 1855, (page 735,) and that thereon plaintiff's lots were designated as 45x100, and the space in front to the river as a "levee." What was then a "levee?" The answer shows "the location for a railroad." By what title held? The act of 1855, § 6, states that "the fee is vested in the county;" but thereon plaintiff claims that the city has no control over the "levee," either to improve it, collect wharfage for its use, or grant the right of way over it to defendant. When that act was passed, only counties had been organized. By like legislative authority, Atchison City was chartered (by public act,) February 12, 1858, and inconsistent acts were thereby repealed, or *pro tanto* modified, and the control of the streets and levees was vested in the city. So with the acts of 1868, page 160, clauses, 2, 25,

and 31 of § 30. And see *Commr's of Franklin Co. v. Lathrop,* 9 Kas., 453. But when the lots intended for sale are required to to have their precise length and width stated, that a purchaser may know what he is buying, does he acquire more than such size by purchase? We think not. The abutting lot-owner has only the same right in and to the streets and public grounds that any other citizen has. And this case is simply this, that the city authorities have licensed defendant for the public welfare to construct in the public highway, or public grounds, an improved means of travel and transportation which to some extent obstructs the means of travel and transportation in use in the days of Blackstone, but has not destroyed the one while giving the other; and like grading a street, licensing the erection of gas works, or building a dock, a part of the public may suffer while others profit; a chance which all who invest in a busy, growing, changing city, must be presumed to know is attended with risk, and without the right of the public so to do, public improvements and private enterprise alike would be subject to private caprice, and could never know when the point of· danger was passed.

*John J. Ingalls,* and *Everest & Greenawalt,* for defendant in error :

1. The petition contained all the necessary averments to constitute a valid cause of action in favor of Garside against the railroad company. It alleged that Garside was the owner in fee simple of the premises; that he had erected valuable and lasting improvements thereon; that he was entitled to the unobstructed use of and passage upon the levee; that the railroad company wrongfully, unjustly, and without Garside's permission, operated a railroad over and along the levee in front of his premises, depreciating their value and destroying his business; that said company obstructed the passage upon said levee, and permitted its cars and engines to stand thereon in front of ·Garside's premises, thereby obstructing the use thereof and passage thereon, and access to Garside's premises; that no compensation has been paid or assessed for the right of way over the levee, or for the injury

to Garside's premises; and that Garside has suffered damages by reason of the acts complained of.

2. The second defense stated in the answer of the railroad company was bad in substance and fatally defective in form. Had the mayor and councilmen of the city of Atchison the power to grant the railroad company the right to use the levee adjoining Garside's premises for the construction and operation of a railroad, without compensation to Garside for injuries resulting from such use? Admitting for the purposes of this branch of the argument that the mayor and councilmen had the power, does said defense show that they ever exercised it, or that the railroad company ever complied with the conditions precedent imposed by the legislature, and with the conditions subsequent, alleged to have been imposed by the municipal ordinance?

Upon the first proposition we invite the attention of the court to the consideration of the following points, as embracing the principles essential to an intelligent conclusion: Where did the title in fee of the levee in the city of Atchison vest by virtue of the execution and record of the plat of the town? What title or interest in the levee had Garside as the owner of the lots fronting upon the same, he having made lasting and valuable improvements upon his premises? What power had the mayor and council over the levee, the same being public ground within the corporate limits of the city of Atchison? Had the mayor and council the power to grant the right to use the levee for the construction and operation of said railroad? Was the attempted appropriation of the levee for the uses and purposes of the railroad, without compensation to adjoining owners, the imposition of an additional burden and servitude upon the soil, inconsistent with the uses and purposes to which it was dedicated?

By the statutes of this state, as interpreted by this court, the fee of the levee in the city of Atchison vested in the county of Atchison, in trust for the public uses indicated by the dedication, and for no other use or purpose. In *Comm'rs of Franklin Co. v. Lathrop*, 9 Kas., 453, this court says, "The

execution and record of the plat of a city conveys to *the county* the fee of such parcels of land as are therein expressed, named or intended for public use."

The dedication did not vest in the county of Atchison an absolute fee-simple title to the levee in the city of Atchison. Neither did it divest the Atchison Town Company, or its grantees, of whom Garside was one, of the absolute title; but the fee in the levee remains in the original owners and their grantees, subject to the easement of the public, for which the county holds it in trust. The sole effect of the dedication is to estop Garside from asserting any right of exclusive possession inconsistent with the uses and purposes for which the dedication was made, while the dedication continues in force. See 2 Smith's Leading Cases, 231, where this whole subject is very thoroughly discussed and the decisions collated. 6 Hill, 412; 6 Pet., 431, 498; 10 Minn., 104, 105; 5 Wis., 32. The same general principles of law apply to public squares and *levees* as well as to streets and highways, although in some particulars the easement may differ, as the dedication is to be considered in reference to its object. If the way is used for passing and repassing, common to all people, it is a highway, whether it is called a road, street, public square, or levee.

Having shown that by the statutes of this state, as interpreted by this court, the title to the levee in the city of Atchison vested in the county of Atchison by the registration of the plat on March 4th, 1856, and that the rights of Garside accrued at that time, we maintain that no subsequent act of the legislature or of the mayor and council could abridge or destroy the rights then acquired, particularly as in this case where lasting and valuable improvements had been made. The city of Atchison therefore, not holding the title for any purpose, its authority over the levee must be derived from an express grant of power, not inconsistent with the vested rights of Garside. (*Paine v. Spratley,* 5 Kas., 525.) The only powers possessed by the mayor and council over the levee and other public grounds within the corporate limits at the date of the ordinance before cited, will be found in the act incor-

porating cities of the second class: Gen. Stat. 1868, ch. 19, §§ 2, 25, 36. These sections confer the power to open and improve streets, avenues and alleys, make sidewalks, vacate streets, and *regulate the passage of railways through the streets and public grounds of the city*. The power to grant the right to construct and operate a railroad over and along the levee in said city, was neither necessarily nor impliedly given as corporate power. Nor is it incidental to the declared objects and purposes of the corporation. The power to regulate the passage of railways does not, either in terms or by implication, confer the right to donate the levee for purposes foreign to the uses for which it was originally dedicated.

Irrespective of the question in whom the title to the levee vested, and even conceding for the purposes of the argument that Garside only owned to the east line of his lots facing on the levee, we claim that he had the right to the unobstructed use of the same, and that this right was property as much as the soil itself, and that he could not be deprived of it without compensation. 1 Redf. Rlys., 308; 21 Mo., 25; 31 Mo., 187; 7 Ind., 38; 13 Ind., 463; 2 Ohio St., 235; 14 Ohio St., 523. The right to use and enjoy the levee was an appurtenance to the lots of Garside, adjoining the same, and an injury to the appurtenances is an injury to the whole property, and for such injury Garside has a right of action. 1 Redf. on Rlys., § 10.

No estate to the levee, either in trust or fee, ever vested in the city for any purpose whatever, and the functions of the mayor and council in relation to the same were merely those of police, public convenience and sanitary regulation, and neither the legislature nor the mayor and council had any power to authorize either a direct or consequential injury to Garside's property without full compensation to him, and they have no power to dispense with the payment of such compensation. 6 Wis., 605; 16 Wis., 640; 3 Hill, 567; 25 Wend., 464; 12 Ind., 620; 23 Ind., 623; 17 N. H., 47; 14 Conn., 146; 1 Am. Law Reg., 196.

The use by the railroad company of the levee opposite Garside's premises for the purpose of constructing and operat-

ing a railroad without compensation to him for resulting injuries, is not such a use or purpose as was named, expressed or intended in the dedication. It interfered with the vested rights of Garside, imposed an additional servitude upon his land, and was the taking of private property for public uses without compensation. Const. of Kas., art. 12, § 4; 14 N. Y., 506; 39 N. Y., 404; 10 Minn., 82; 14 Wis., 285; 14 Ohio St., 513; 26 Conn., 255; Cooley's Const. Lim., §§ 546, 547.

3. The argument and authorities heretofore cited address themselves to the sufficiency of the substance of the second defense in the answer of the railroad company, but the demurrer of Garside extends also to the *form* of the pleading, which we say is insufficient. The answer fails to show any authority or license from the county of Atchison to the railroad company to use the levee for the construction and operation of its road. Nor does it give the title nor substance of the ordinance under which the license is claimed, nor does it show that the ordinance was ever published as required by law. The answer omits to show that the railroad company restored the levee to its former state, or to such a state as would not necessarily have impaired its usefulness. This should be affirmatively pleaded, and not by way of argument or inference. The answer does not show that the railroad company ever made or filed a map and profile of the route of the road in the office of the register of deeds of Atchison county previous to constructing their road. Gen. Stat. 1868, p. 203, § 48.

The opinion of the court was delivered by

VALENTINE, J.: The defendant in error, Joshua Garside, sued the Atchison & Nebraska Railroad Company for constructing and operating its railroad over, along and across a certain piece of ground in the city of Atchison known as the "Levee," or Levee street, and alleged by him to be a "public highway." The railroad company demurred to the plaintiff's petition on the ground that it did not state facts sufficient to constitute a cause of action, and also moved the court to strike

out a portion of said petition on the ground that it was irrelevant and redundant. The court overruled both the demurrer and the motion, and then the defendant, the railroad company, answered. The answer contained two defenses. The plaintiff then demurred to the second defense on the ground that it did not state facts sufficient to constitute a defense to the plaintiff's action. The court sustained the demurrer, and it is this decision that is complained of here. The defendant below alleged in its second defense among other things that the said levee was dedicated as a *levee* to the public by the proprietors of the city of Atchison by filing in the register's office their map and plat of said city, showing the streets and grounds reserved for public purposes, properly executed and acknowledged, as provided by law; that the railroad company obtained the right to construct and operate its road over said levee from the city of Atchison; that it did so construct and operate its road in a careful and proper manner; that it did not obstruct the said levee, but left a sufficient space for passage and travel; that it conformed the grade of the railroad to that of the levee, etc. And the company does not anywhere seem to admit that the levee is a street or highway. The court below probably ruled correctly upon the demurrer to the petition, and the motion, but certainly incorrectly and erroneously upon the demurrer to the second defense stated in the answer. In this state the fee of all real estate when dedicated to public use by the proprietors of any town or city vests absolutely in the county wherein such real estate lies, and the county forever afterwards holds the property in trust for such use: (Laws 1855, page 735, § 6; Laws of 1859, page 81, § 6; Comp. Laws of 1862, 120, § 6; Gen. Stat., 619, ch. 78, § 6; *Comm'rs of Franklin Co. v. Lathrop*, 9 Kas., 453.) The county however, being only a political subdivision of the state, a mere agent of the public, and at most only a *quasi* corporation, is so far under the control of the legislature as to be subject to all the laws which the legislature may pass for the government of property held by the county

1. Fee of streets and highways in county, for use of the public.

in trust for the public use. Therefore, while the fee of such property may be vested in the county, the control thereof may be placed somewhere else. Such in fact is the case in this state. While the fee of all streets and other public grounds situated in a city is in the county, as we have already seen, yet the control of such property is almost entirely and absolutely in the city: Gen. Stat., 160 to 165, ch. 19, § 30, subdivisions 2, 25, 36; Laws of 1871, page 144, ch. 62, §§ 16, 37, 47; Laws of 1872, ch. 100, §§ 32, 54, 64. The county holds the property as a mere agent of the public, and in trust for the public use. But the city has the control

2. Cities as agents of the public, have control over streets and public grounds.

over it as another agent of the public. The city has power "to provide for and regulate the passage of railways through the streets and public grounds of the city;" (Gen. Stat., ch. 19, § 30, subdiv. 25; Laws of 1871, ch. 62, § 47; Laws of 1872, ch. 100, § 64;) and the city of Atchison has exercised such power in the present case. In this case the city of Atchison has given complete and ample power for the time being to the railroad company to construct and operate its road over said levee, and that is all that is necessary. As to what the extent of that power is, it is not necessary to be determined in this case. So far as this case is concerned it makes no difference whether the right of the railroad company to the land over which its road is located is an interest in fee, or only an easement, or merely a license or privilege for the time being from said city.

There is another question: Is the plaintiff below, under

3. Damages for building and operating railroad over streets and public grounds.

the circumstances of this case, entitled to recover damages of any kind? Judge Dillon in his work on Municipal Corporations uses the following language:

"Sec. 555. It has often been decided and is settled that the legislature has the power to authorize the building of a railroad on a street or highway, and may directly exercise this power or devolve it upon the local municipal authorities.

"Sec. 556. If the *fee* in the streets or highways is in the public, or in the municipality in trust for public use, and is not in the abutter, the doctrine seems to be settled that the

legislature may authorize them to be used by a railroad company in the construction of its road without compensation to adjoining owners, or to the municipality, and without the consent and even against the wishes of either.

"SEC. 557. But where the *public have only an easement* in the street or highway it has been generally but not always held that against the proprietor of the soil the use of the street or highway for the purposes of a steam railroad is an additional burden, which, under the constitution of the different states, cannot be imposed by the legislature without compensation to such proprietor for the new servitude."

And to the same point see also Cooley's Constitutional Limitations, 552, 553, and the cases there cited; also, brief for plaintiff in error in this case, and authorities there cited. The damages that the plaintiff claims in this action may be divided into three kinds.   First, damages as compensation for the use **4. When railway company not liable.** of the ground over which the railroad is located, or for the additional burden imposed thereon by the railroad company, the plaintiff, as abutting proprietor, claiming to be the owner of the fee in such ground.   Second, consequential damages arising from noise, smoke, offensive vapors, sparks, fires, shaking of the ground, and other inconvenience and annoyances arising from the construction and operation of the railroad where the same is constructed and operated in a legal and proper manner.   Third, damages for illegal blocking up and obstructing said levee, and for other acts done illegally, or in an improper manner.   The plaintiff cannot of course recover for the first kind of damages, for he does not own the fee in any part of the levee where the railroad is located; and the railroad company has under the authority of the city an undoubted legal right to construct and operate its road on said levee if it does so in a legal and proper manner.   Neither can the plaintiff recover for the second kind of damages.   And this is so, for the same reasons that he cannot recover for the first kind of damages, and for the additional reason that such damages are too remote.   They are the consequential results of the exercise of a lawful business, and however annoying or injurious they may be to the plain-

tiff they form no foundation for a cause of action. They are in fact *damnum absque injuria*. In Ohio, where a railroad company under authority of a city constructs and operates a railroad along a street near the plaintiff's lot and dwelling-house, and "runs steam engines, locomotives and cars along such street and railroad, thereby making noises and shaking, disjointing, and disturbing such dwelling-house, and where such company under the authority aforesaid, and for the purpose of propelling such engines, locomotives, and cars, keeps dangerous fires, thereby generating noxious vapor, smoke, and filth near to and diffusing the same in and about such lot and dwelling-house so as to render the air unwholesome, and to discommode the occupants and owners of such lot and dwelling-house," it is held "that in respect to the noise, smoke, or other discomforts arising from the ordinary use of the railroad by the company, the plaintiff has no more right to recover than any citizen who resides or may have occasion to pass so near the street as to be subject to like discomforts." *Parrott v. C. H. & D. Rld. Co.*, 10 Ohio St., 624, 630. In Missouri it has been held that any damage resulting to property abutting on a street from the ordinary use of a railroad on the street is *damnum absque injuria*. *Porter v. North Mo. Rld. Co.*, 33 Mo., 128, 138. See also *Lackland v. Rld. Co.*, 34 Mo., 259, 274; *Moses v. P. Ft. W. & C. Railroad Co.*, 21 Ill., 516; *Slatten v. Des Moines Valley Rld. Co.*, 29 Iowa, 148, 153. And indeed it must be true as a general rule, that the rightful and *bona fide* exercise of a lawful power or authority cannot afford a basis for an action. Therefore, in a case like the one at bar, where the railroad company has a legal right to construct and operate its road over certain grounds, we do not think that the company can by so doing be held liable for any damages of any kind where it constructs and operates its road in a legal and proper manner. It can be held liable only where it constructs or operates its road in an illegal, improper, or wrongful manner. The plaintiff may we think recover for the third kind of damages. But before he can do so he must

5. When railroad company is liable. show among other things that the levee is a street or highway, as he has alleged; that the railroad company wrongfully and unnecessarily blocked up and obstructed the said street or highway, and that the plaintiff received actual injury from such obstruction. And the injury must be special as to him, and not such as affects the public in general. Of course the railroad company can have no legal right to permanently block up a street. And it can have no legal right to temporarily block up or obstruct a street except where it necessarily does so in the lawful and proper use of its road. It can psss and repass with its engines and cars the same as individuals may with their vehicles, and for such passing and repassing it cannot of course be liable to any one; but it has no more right to obstruct the streets than any individual has, and it may make itself liable for obstructing a street the same as an individual may. The plaintiff's petition when attacked by a demurrer or motion, such as was interposed in this case, is perhaps sufficient as stating a cause of action for this kind of damages, but for no other kind of damages. But if such petition were attacked by a motion to have it made more definite and certain with regard to the said obstructions, and the special injuries supposed to have resulted therefrom, the petition would not be held sufficient as stating a cause of action for even this kind of damages.

The judgment of the court below must be reversed, and the cause remanded with the order that the demurrer to the second defense set forth in the answer be overruled, and for further proceedings.

All the Justices concurring.