THE LEAVENWORTH, NORTHERN & SOUTHERN RAILWAY COMPANY v. CORNELIUS W. CURTAN et al.

1. ALLEY — Obstruction — Damages — Action — Theory of Trial. An action was brought by a lot owner to recover damages from a railroad company for obstructing the alley at the rear of his lot and preventing passage to and from the same. It was tried by the parties and the court below upon the theory that the occupancy and obstruction were permanent and enduring. Held, That it will be so considered and treated in the supreme court.

2. COMPENSATION for Peculiar Injury. It is not necessary that a portion of the lot should actually have been taken by the railroad company in order to entitle the owner to damages for the obstruction; but if access to and egress from the property have been cut off by the construction of a railroad, the owner suffers a peculiar and special injury for which he is entitled to compensation.

3. CITY, License from, no Defense. No license or consent from the city will exempt the company from liability to the owner for placing an

obstruction across the alley which practically excludes access to the lot for the ordinary purposes for which an alley is used by an owner·

4. ———— *Partial Obstruction—Liability.* Although the obstruction may not wholly prevent access to the property, if it is such as to practically preclude the ordinary and reasonable use of the alley as a means of entering and leaving the rear of the lot, the company is liable for the injury suffered.

### *Error from Leavenworth District Court.*

ACTION by *Curtan* and wife against the *Railway Company,* to recover damages for the permanent obstruction of certain alleys. Judgment for plaintiffs for $1,000. The defendant brings the case here. The opinion states the material facts.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error:

1. The plaintiffs cannot recover in this action because, first, if the railroad company occupied the land and the alley with its buildings under lawful authority, there was not a taking of plaintiff's property; secondly, if the railroad company did not occupy the alley and premises under lawful authority, it was simply guilty of a public nuisance, and the plaintiff has neither alleged nor shown in evidence any special or peculiar damages entitling him to recover. See *Glass v. Memphis Rld. Co.,* 10 S. Rep. 215, 217; *McGee's Appeal,* 8 Atl. Rep. 237; *City of East St. Louis v. O'Flynn,* 10 N. E. Rep. 395; *Whitsett, Exec'x, etc., v. Union Depot & Rld. Co.,* 15 Pac. Rep. 339; *Barr v. City of Oskaloosa,* 45 Iowa, 275; *Fearing v. Irwin,* 55 N. Y. 486, 490; *Coster v. The Mayor,* 43 N. Y. 399, 414, 415; *City of Moundsville v. Railroad Co.,* 16 S. E. Rep. 514; *School District v. Neil,* 36 Kas. 617; *Billard v. Erhart,* 35 id. 611; *Shaubut v. Railroad Co.,* 21 Minn. 502; *Rochette v. C. M. & St. P. Rly. Co.,* 32 id. 201; *Barnum v. M. T. Rly. Co.,* 33 id. 365: *Lakkie v. C. St. P. M. & O. Rly. Co.,* 46 N. W. Rep. 912; *Aram v. Schellenberger,* 41 Cal. 449; *Bigley v. Numan,* 53 id. 403, 404; *Payne v. McKinley,* 54 id. 532; *McCowan v. Whitesides,* 31 Ind. 235; *Swanson v. Boom Co.,*

42 Minn. 532; *Zettel v. City of West Bend,* 48 N. W. Rep. 379; *Atwood v. City of Bangor,* 22 Atl. Rep. 466.

2. The court erred in giving certain instructions to the jury. *K. P. Rly. Co. v. Mihlman,* 17 Kas. 234.

3. There was error in the admission of evidence. The following questions were asked of the plaintiffs on direct examination:

"Ques. State how much the value of the use of this part of the alley would be to this lot, if you are acquainted with such things?

"[Defendant objected to this question because incompetent and irrelevant. This objection was overruled, defendant excepting.]

"Q. As near as you can. A. As near as I can, it is about what I have said.

"Q. That is, about $1,300? A. Yes, sir; one-third the value of the lot.

"Q. You think as much as $1,300 or more? A. Yes, sir."

It will be seen that the defendant objected to this character of testimony, and the court in its ruling held it to be admissible, over the objection of the defendant. This required the witness to give his opinion or conclusion upon a matter which was not and is not the subject of expert testimony. It is asking a witness for a conclusion, which, if proper at all, would be for the jury alone to determine. *W. & W. Rld. Co. v. Kuhn,* 38 Kas. 675.

In the cross-examination of this witness, the following question was asked by the defense:

"Ques. You could very readily make a crossing in that sidwalk so you could pass over it, could you not?"

[Plaintiff objected to the question. The city ordinances are to be considered by the court as law, and they prohibit it. The objection was by the court sustained, to which ruling of the court the defendant duly excepted.]

This question was proper on cross-examination, because it tended to show that the plaintiff could use his premises in other ways besides the alley, and was proper, if for no other

reason, to show that his damages were not as great as claimed. The court seems to have taken into consideration the city ordinances of Leavenworth, which, however, were not introduced in evidence, and we do not know what they purport to show. We do not think that the district court, any more than this court, could take judicial notice of the city ordinances of any city in the state. It does not therefore appear that there existed any legal objection to making a crossing to one's premises over the sidewalk in front of the same. The question should therefore have been permitted.

But in any event, the case was submitted to the jury upon an erroneous theory. Plaintiffs were not entitled to recover the damages alleged by them, nor indeed under the pleadings were they entitled to recover at all.

*L. B. & S. E. Wheat*, for defendants in error:

The petition states a good cause of action for such appropriation, if that part of the alley is to be considered as vacated, according to the rule of law on such subjects, shown by the cases of 34 Kas. 158, 163; 36 id. 46. But irrespective of that, and merely because of the obstruction of the alleys and permanent appropriation of parts thereof by the railway company to its own use, so as to prevent access to said lot 3, by way of the alleys from Shawnee and Eighth streets, and also so as to prevent passage through the alleys at the rear of said lot 3, and the consequent damages to defendants in error, they were, we submit, entitled to recover, and the case is within the rules of law shown by the cases of *Ft. S. W. & W. Rly. Co. v. Fox*, 42 Kas. 490–494, and cases there cited; *O. O. C. & C. G. Rld. Co. v. Larson*, 40 id. 307, 308; *A. & N. Rld. Co. v. Garside*, 10 id. 552; *Twine case*, 23 id. 585; *Andrews case*, 26 id. 702; *Andrews case*, 30 id. 590.

In relation to the matter of the questions referred to in the brief of the plaintiff in error, we submit that the cases of *K. C. & S. W. Rld. Co. v. Ehret*, 41 Kas. 22; *K. C. Rly. Co. v. Allen*, 24 id. 33; *O. O. C. & C. G. Rld. Co. v. Fisher*, 42 id. 677, 678; *L. & W. Rly. Co. v. Hawk*, 39 id. 638, 641; *L. T.*

& S. W. Rly. Co. v. Paul, 28 id. 816; 45 id. 537, show that the judgment should not be reversed because of anything there referred to, but, on the contrary, we submit that the same was proper and competent testimony; but, if we are wrong in that respect, then and in this connection we also refer to 42 Kas. 563. See, also, Reed v. New, 35 Kas. 727, 729.

The opinion of the court was delivered by

JOHNSTON, J.: This action was brought by Cornelius W. and Bridget E. Curtan against the railway company, to recover damages suffered by reason of the permanent obstruction of two alleys in the rear of a lot owned by them, by which the ingress to and egress from the same were prevented and destroyed: The Curtan property which was damaged, being lot 3, is in block 116 of Leavenworth city, through which block the railway of the plaintiff in error was built in January, 1888. The lot is 44 feet wide and 140 feet·deep, and is in the east part of the block, which abuts on Broadway on the east. Shawnee street lies on the south side of the block, and Seneca street bounds it on the north, and an alley, shown to be 16 feet wide, runs through the middle of the block from Seneca street to Shawnee street, passing on the rear of lot 3. From this alley, and at the rear of lots 3 and 4, another alley extends westwardly through the block to Eighth street. The course of the railway built through the block was from the southeast to the northwest, across both of the alleys mentioned; and, besides making a deep excavation, the company, in fencing its right-of-way, built a high stone wall across the alley running from Seneca street to Shawnee street, and also across the alley extending westwardly. Upon the top of this wall a high fence was built, and a depot of a permanent character, which extended across both alleys, was constructed by the company, making it absolutely impossible to pass south or west through the alleys from the rear of lot 3. No part of lot 3 was appropriated by the company, but the stone wall and fence were built from the southwest corner of the lot in a northwesterly direction across the alley, leaving only an angle

of the alley at the rear of the lot. The location and obstructions mentioned may be seen from the following sketch or plat, which was used as evidence in the trial of the cause:

It is alleged that the obstruction destroyed the approaches and means of access to and egress from the rear of the lot, and deprived the owners of the benefits of the alleys in taking provisions, fuel and other things onto the lot, whereby they were damaged in the sum of $2,000.

The railway company answered by a general denial, and further, that it occupied the alleys with municipal consent. The trial resulted in a verdict in favor of Curtan for $1,000, and the railway company now insists that, as no part of the lot was actually taken, no damages can be recovered by reason of the obstruction, and further, that if the alleys were occupied by it without authority and their obstruction was a public nuisance, the owners have not by their pleadings or proof alleged or shown that which would entitle them to recover. The case appears to have been brought and tried throughout upon the theory of a permanent occupancy and obstruction of the alleys by the railway company. The answer specifically alleges, as we have seen, the passage of an ordinance by the city authorizing the building of its road over both of the alleys, but no proof of the ordinance or the giving of municipal

consent was offered.   No question appears to have been raised as to the existence of such an ordinance, nor was any claim made during the trial that there was a lack of municipal consent.   The plaintiffs below in asking damages and in proving the same, and also in the instructions requested, chose to consider the occupancy and obstruction as permanent or lasting, and damages were awarded upon that theory.   In *Railroad Co. v. Andrews*, 26 Kas. 710, which was a similar action, it was said that

1. Alley—obstruction—damages—action—theory of trial.

" The plaintiff has chosen to consider the obstruction of the alley as a permanent injury to his lots, as a *quasi* condemnation and permanent taking and appropriation of a certain interest in his property; and he can, therefore, recover merely for the consequent depreciation in value of his property by reason of such permanent injury, by reason of such permanent taking and appropriation, by reason of such *quasi* condemnation.   He had the privilege to consider the obstruction of the alley as only a temporary injury, and to have sued for any special or temporary damage which might have occurred at any time by reason of the obstruction.   But it seems that he did not choose to so consider the obstruction; he chose to consider it as permanent; and, as he has chosen to consider it as permanent, and amounting to a permanent taking and appropriation of an interest in his property, he must be governed by the rules generally governing condemnation proceedings."

Treating it in the light of a permanent appropriation, as the parties and court have done, have the landowners suffered a loss for which they can recover?   It is not necessary that a portion of the lot should actually have been taken by the company in order to entitle the owners to damages for the obstruction.   In this state it is well settled, that if the access to and egress from property have been cut off by the construction and operation of a railroad upon the streets or alleys, the owner suffers a peculiar and special injury, for which he is entitled to compensation.   (*Railroad Co. v. Garside*, 10 Kas. 552; *Railroad Co. v. Twine*, 23 id. 585 ; *Railroad Co. v. Andrews*, 26 id. 702; same case, 30 id. 590.)   Numerous decisions have been made

2. Compensation for peculiar injury.

to the effect that the construction of a railroad upon a street
or alley, with authority from the city, where it was restored
to its former condition, or where the structure did not deprive
the owner of the reasonable use of the street or alley as a
means of ingress to and egress from his lots, no recovery could
be had.  The fact that the street or alley may be narrowed
by the structure, or made less convenient, or that by reason
thereof the property would be less attractive or desirable, will
create no liability against the company if the owner's special
use and private right of entering and leaving his property
has not been unreasonably abridged.  (*Heller v. Railroad Co.*,
28 Kas. 625; *Railroad Co. v. Larson*, 40 id. 301; *Railroad
Co. v. Cuykendall*, 42 id. 234; *Railroad Co. v. Smith*, 45 id.
264.)  While adhering to the doctrine stated in these latter
cases, we are of opinion that the lot owners in this case suf-
fered an injury from the obstruction placed over the alleys
for which they are entitled to compensation.  If we assume
that the city undertook to authorize the occupancy of the
alleys with the company's road, that fact would not prevent a
recovery.  No license or consent from the city
would exempt the company from liability for
placing an obstruction across the alleys which
practically excluded access to the lot for the ordinary pur-
poses for which alleys are used by a private owner.  In *Rail-
way Co. v. Fox*, 42 Kas. 494, it was said that

3. City, license
from, no de-
fense.

"If the city had granted permission to lay the railroad in
the street, and it had been constructed in a proper manner, so
as not to impair the usefulness of the street for public travel,
or to prevent access therefrom to the abutting lots, Fox would
suffer no injury for which he could recover; but neither the
authority nor the manner of construction can make any dif-
ference where the entire street is appropriated and the lot
owner is cut off from all access to the street from his property.
He suffers an injury not shared by the public generally when
he is denied the use and enjoyment of the adjoining street,
and it is immaterial whether the proper and skillful con-
struction of the road required the appropriation of the entire
street or not.  The right of access from the street to his prop-

erty is an individual one, as inviolable as the property itself, of which he cannot be deprived in any way without creating a liability against the wrongdoer for the damages occasioned."

Although the obstruction in this case does not wholly prevent access to the property, it is built in such a way as to practically preclude the ordinary use of the alley as a means of entering and leaving the rear of the lot.

4. Partial obstruction— liability.

A person can enter the alley from the east and reach the rear of the lot, but a team and wagon cannot pass through to the west or north, as formerly, and the alley is so narrow that a team and wagon cannot be turned therein. When a person with a team and wagon loaded with material drives in he meets an impassible barrier just at the rear of the lot, and to get out it is necessary to unhitch the team and push the wagon out by hand or pull it out from the rear. If the stable, coal house or other storeroom is built on the northwest corner of the lot, as the owner may, they cannot be reached at all. The obstruction angles from the corner of the lot to the other side of the alley, leaving a point or wedge-shaped piece of ground at the rear of the lot, and hence a building on the west side, at the point of the angle, could not be reached for the unloading of hay, grain, coal or wood by any reasonable means. It thus appears that the owners are deprived of the enjoyment of the appurtenant right which they have in the alley, and suffer a loss in kind and degree differing from the public generally. The company having encroached upon this right, and obstructed the reasonable and ordinary use and enjoyment of the alley as a means of access and egress to and from the lot, is liable for the injury suffered.

Some criticism is made upon the instructions given to the jury in respect to being shut off by the obstruction from passage to other streets, but in view of the nature of the obstruction and the testimony offered, we see nothing substantial in the objections. One objection was that the court told the jury "that plaintiffs are entitled to a verdict on the facts as they exist. Plaintiffs are not required by law to widen the alley at their expense, to reduce damages, or for any pur-

pose." It is contended that a party who claims to be damaged is obliged to reduce his damages as low as possible, and that, upon certain testimony that was offered, it was the duty of the owners to take off a portion of the rear of their lot, in order that wagons might be turned in the alley. The rule invoked has no application here. The owners are not required to devote the rear of their lot for a highway, nor were they under any obligations to construct one from Broadway, on the front, in order to reach the rear. They had an appurtenant right in the alley obstructed, and the simple question to be tried was, what injury was sustained by the obstruction?

The fact that the lot was accessible from a street at the other end will not prevent a·recovery for the injury resulting from the obstruction at the rear. (*Railway Co. v. Fox*, 42 Kas. 496.)

Complaint is made that witnesses were permitted to state their conclusions as to how much the obstruction depreciated the value of the lot. Both parties were careless in the examination of witnesses in this respect. They were frequently asked the value of the property, and, after stating the value, they were asked how much less it was worth by reason of the obstruction. These questions were asked and answered in most cases without objection, and afford no ground for reversal. (*Railroad Co. v. Fisher*, 42 Kas. 675.)

The judgment of the district court will be affirmed.

All the Justices concurring.